IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

   v.

ERNEST LEE BAILEY, a/k/a "E",

   *Defendant*

Criminal No. ELH-20-0383

**MEMORANDUM**

This Memorandum addresses post-sentencing motions filed by defendant Ernest Lee Bailey. He seeks a correction of his recent sentence, pursuant to Fed. R. Crim. P. 35(a), on the ground of "clear error."

No hearing is necessary. For the reasons that follow, I conclude that defendant's request under Rule 35(a) is without merit.

### I.    Factual and Procedural Background

Defendant was one of twelve individuals named in a Superseding Indictment filed on March 11, 2021. ECF 10. He had his initial appearance on March 26, 2021 (ECF 48) and was released on pretrial supervision on March 29, 2021. ECF 52.

A Second Superseding Indictment followed on May 12, 2022. ECF 275. Then, a Third Superseding Indictment (ECF 524) was filed in July 2023.

On September 14, 2023, Bailey entered a plea of guilty to Count Thirteen of the Third Superseding Indictment. *See* ECF 569. Count Thirteen charged defendant with possession with intent to distribute a controlled substance on November 16, 2020, in violation of 21 U.S.C.

§ 841(a), (b).  The offense to which defendant entered his guilty plea carries a mandatory minimum term of imprisonment of five years with a maximum of forty years.

Defendant tendered his guilty plea pursuant to a Plea Agreement.  *See* ECF 570.  In accordance with Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of imprisonment of not more than 135 months.  *Id.* ¶¶ 9, 11 ("C Plea").

The Plea Agreement (ECF 570) contains a detailed Statement of Facts, almost seven pages in length.  *Id.* at 10-17.  Defendant stipulated and agreed that, if the case had proceeded to trial, the government would have proven the facts in the stipulation, beyond a reasonable doubt.  And, at the guilty plea proceeding, the government presented the summary of facts and the defendant agreed with them.

Among other things, the Statement of Facts established that between November 2019 and November 2020, Bailey "led a drug trafficking organization ('DTO') that was responsible for distributing large quantities of controlled substances, including heroin, fentanyl, cocaine, and . . . 'MDMA' in and around Baltimore."  *Id.* at 10. The Statement of Facts also provides that Bailey "conspired to and did obtain heroin . . . from a DTO based in Mexico."  *Id.*  Specifically, Bailey purchased multiple kilograms of heroin from the Mexican DTO.  *Id.* at 15.  He also obtained heroin from Coconspirator B in New York.  *Id.* at 16.  And, he sent Coconspirator D, a drug courier and narcotics tester, to meet with Coconspirator B in New York.  *Id.* at 13, 16.

Further, the Statement of Facts provides that Bailey "conspired to acquire fentanyl . . . from the Mexican DTO."  *Id.*  According to the Statement of Facts, Bailey also had "conspired to and did obtain cocaine . . . from his source of supply in Philadelphia, Pennsylvania."  *Id.* at 11.

In addition, intercepted communications and surveillance revealed that Bailey "maintained a network of wholesale drug redistributors . . . ." *Id.* at 13. They "sold the drugs supplied by Bailey to their own customers." *Id.*

Bailey paid $30,000 per kilogram to the Mexican DTO for the heroin, and diluted the heroin for resale, selling it locally for $60,000 per kilogram. *Id.* at 16. Bailey obtained cocaine from a source in Philadelphia whom he knew through Coconspirator C. *Id.* Bailey and Coconspirator C drove to Philadelphia and back in separate cars to obtain the cocaine. *Id.*

Moreover, Bailey used an apartment in Baltimore as a stash location to store and process drugs for redistribution. *Id.* at 13. Bailey's relative was named on the lease, and Bailey paid the relative from November 2018 to July 2021. *Id.* at 14.

A search of the stash location was conducted on November 16, 2020. *Id.* at 15. Drugs and evidence of drug trafficking were recovered. *Id.* at 15, 17. On the same date, law enforcement searched defendant's residence. *Id.* Defendant later was interviewed and, after waiving his rights, he made incriminating statements. *Id.* at 15-17.

Based on the quantity of drugs, defendant had a base offense level of 30 under §§ 2D1.1(a)(5) and (c)(5) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). *See* ECF 608 (Presentence Report or "PSR"), at 15. He received an upward adjustment of two levels under U.S.S.G. § 2D1.1(b)(12) based on his use of an apartment as a stash location. *Id.* And, two levels were added under U.S.S.G. § 3B1.1(c) because defendant was an organizer, leader, manager, or supervisor of the DTO. *Id.* Defendant earned two deductions under § 3E1.1(a). *Id.* But, the government declined to move for a one-point deduction under § 3E1.1(b), because the defendant did not agree to plead guilty until approximately one month before the trial date, and about two and a half years after his initial appearance. *See* ECF 629 (Government's

Sentencing Memorandum), at 3. As a result, the defendant had a final offense level of 32. ECF 608 at 15.

As to defendant's prior record, he had several prior offenses that did not score points. *See* ECF 608, ¶¶ 41-47. Defendant had a criminal history category of II, based on three points awarded for a prior federal conviction in the District of Maryland, for the offense of possession of a firearm by a felon. *See* case MJG-0152. *Id.* ¶ 48. In that case, Judge Marvin Garbis sentenced the defendant to 210 months of imprisonment. He was released onto supervised release in April 2017. Thus, the offense in this case occurred relatively soon after defendant had served a lengthy federal sentence.

In anticipation of sentencing, the Court reviewed the Presentence Report, dated November 17, 2023. ECF 608. In addition, the Court reviewed the government's sentencing memorandum (ECF 629), with several exhibits; defendant's response to the government's sentencing memorandum (ECF 633), as well as defendant's "Memorandum In Aid Of Sentencing." ECF 634.

Sentencing was held on February 7, 2024. ECF 636.[1] The Guidelines called for a period of incarceration ranging from 135 months to 168 months of imprisonment. And, the C Plea provided for a sentence not to exceed 135 months of imprisonment. The government asked for a sentence of 135 months of incarceration. Defendant requested a sentence that corresponded to the mandatory minimum of five years of imprisonment. The Court imposed a below Guidelines sentence of 120 months of incarceration. ECF 637 (Judgment).

Subsequent to the sentencing, Bailey, through counsel, filed a flurry of motions. First, on February 19, 2024, defendant filed a "Motion To Correct Or Reduce Sentence For Federal Rule Crim. Procedure Rule 35." ECF 639. It was followed by an "Amended Motion To Correct Or

---

[1] Sentencing was originally set for January 16, 2023. It was postponed due to snow.

4

Reduce Sentence For Federal Rule Crim. Procedure Rule 35." ECF 640. Then, Bailey filed a "Second Amended Motion To Correct Or Reduce Sentence For Federal Rule Crim. Procedure Rule 35." ECF 641. And, on February 22, 2024, the Court received another submission, also titled "Second Amended Motion To Correct Or Reduce Sentence For Federal Rule Crim. Procedure Rule 35." ECF 644. ECF 641 and ECF 644 appear to be the same in content.

The government has filed an opposition. ECF 645. No reply has been filed. But, the Court has received correspondence from the defendant (ECF 643) and from his wife. *See* ECF 642.

## II. Discussion[2]

Pursuant to Rule 35(a), "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a. The defendant asserts that the Court committed "Clear Error(s) of Fact(s)." ECF 644 at 2.

Under the circumstances here, Rule 35(a) "provides the only authority for the district court to correct or change" the defendant's sentence. *United States v. Fields*, 552 F.3d 401, 404 (4th Cir. 2009). And, "the scope of 'clear error' correctable under Rule 35(a) is extremely narrow." *Id.* "A district court's authority to correct a sentence imposed as a result of 'clear error' is limited to 'cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a).'" *United States v. Ward*, 171 F.3d 188, 191 (4th Cir. 1999) (quoting *United States v. Waters*, 84 F.3d 86 (2nd Cir. 1996)); *see United States v. Layman*, 116 F.3d 105, 108 (4th Cir. 1997).

In ECF 644, the defense asserts, *id.* at 2: "Judge Hollander commendably recognized the mitigating factors presented by Bailey justifying a downward variance in Bailey's sentence of imprisonment." Nonetheless, Bailey complains of multiple errors of fact committed by the Court.

---

[2] The Court has not been provided with a sentencing transcript.

5

These concern the following: 1) defendant's role in the offense; 2) the offense to which defendant pled guilty, *i.e.*, possession with intent to distribute controlled substances, not drug conspiracy; and 3) the Court's failure to award credit for defendant's time on pretrial release.

Defendant complains that the Court erred because defendant was punished as if he were a "kingpin." *Id.* at 3. And, he complains that "the record is bereft of Bailey pleading guilty to any drug 'conspiracy – which would then have subjected him to enhancements in the eventual imprisonment sentence.'" *Id.* at 5. In addition, Bailey asserts that his pretrial release conditions required 24-hour electronic monitoring from March 21 to December 2023. *Id.* at 6. In his view, such "draconian restrictions" should have been subtracted from the 120 months of imprisonment that he received. *Id.* On these grounds, defendant urges the Court to correct the clear errors of fact that resulted in an "objectively unreasonable" sentence. *Id.* at 8.

The Court did not sentence the defendant as a drug kingpin. For one thing, the government expressly acknowledged in its sentencing memorandum that the defendant was not a drug kingpin. *See* ECF 629 at 1. Moreover, the Court found that the two-level upward adjustment in the PSR was appropriate under U.S.S.G. § 3B1.1(c), based on defendant's role as a leader of the DTO and because he was a manager. As noted, defendant stipulated to his role. *See* ECF 570 at 10.

In short, there is no factual error in this regard. To the contrary, the Statement of Facts, included with the defendant's Plea Agreement, and to which defendant agreed, expressly states: "Bailey *led* a drug trafficking organization ('DTO') that was responsible for distributing large quantities of controlled substances . . . ." ECF 570 at 10 (emphasis added). Moreover, the conduct of defendant, recounted at length in the Statement of Facts, is consistent with that of a leader.

There is also no merit to the defendant's claim that the Court erred because it imposed a sentence for the offense of conspiracy—an offense that the defendant claims he did not commit.

At the outset of the sentencing proceeding, the Court reviewed that the defendant had entered a plea of guilty to the offense in Count Thirteen of the Third Superseding Indictment, charging him with possession of controlled substances with intent to distribute.

Nevertheless, ¶ 6(a) of the Plea Agreement (ECF 570) expressly provides that the Statement of Facts "establishes the commission of additional offenses other than the offense to which the Defendant has agreed to plead guilty – *i.e.*, drug trafficking conspiracy, in violation of 21 U.S.C. § 846; bank fraud, in violation of 18 U.S.C. § 1344; and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h).  Moreover, defendant stipulated and agreed that, pursuant to U.S.S.G. § 1B1.2(c), "the additional offenses are treated as if the Defendant had been convicted of additional counts charging those offenses."

Clearly, in arriving at a reasonable sentence, the Court was entitled to consider the defendant's involvement in a drug trafficking conspiracy.  That conspiracy is laid out in detail in ECF 570.

Finally, the defendant argues, for the first time, that the Court erred by failing to reduce his sentence based on the period of time that he spent on pretrial release with electronic home monitoring.  ECF 644 at 6-7.[3]  The defendant is not entitled to credit toward his sentence on the basis of the alleged difficult conditions of pretrial release.  To be sure, the Court could consider the hardship of pretrial detention in imposing a variant sentence, and also how the defendant performed on pretrial release.  To my recollection, I noted at sentencing that defendant had been on pretrial release since November 2020, and that he had done well while on pretrial release.

---

[3] The defense had not made this argument in its written submission.  And, to my recollection, he did not make this argument at sentencing.

Under 18 U.S.C. § 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences . . . ." (Emphasis added). Pretrial release, even with electronic monitoring or home confinement, does not qualify as "official detention." *See Reno v. Koray*, 515 U.S. 50, 65 (1995) ("We hold that the time respondent spent at the Volunteers of America community treatment center while 'released' on bail pursuant to the Bail Reform Act of 1984 was not 'official detention' within the meaning of 18 U.S.C. § 3585(b). Respondent therefore was not entitled to a credit against his sentence of imprisonment."); *United States v. Prine*, 167 F. App'x 962, 962 (4th Cir. 2006) (concluding that "time spent on home confinement with electronic monitoring does not constitute time served in 'official detention' under 18 U.S.C. § 3585(b)"); *United States v. Insley*, 927 F.2d 185, 186-87 (4th Cir. 1991) (explaining that "[c]onditions of release are not custody" for purposes of Section 3585(b) and holding that defendant was not entitled to receive credit for time served while was released on appeal bond because the defendant's release did not constitute "official detention"); *Clawson v. United States*, GBL-09-00367, 2015 WL 13427822, at *4 (E.D. Va. July 7, 2015) ("Home confinement with restrictive stipulations does not constitute 'official detention'" under 18 U.S.C. § 3585.").

At sentencing, I considered the factors under 18 U.S.C. § 3553(a). I noted that the defendant is 51 years of age; he has been married since 2015; he has four children; he is the grandfather of two; he did well on pretrial release; and he has been gainfully employed. I also observed that defendant's childhood was marked by poverty and an absent father. Moreover, he has been a victim of violence, both by stabbing and by gunfire. And, to defendant's credit, he was not personally involved in any violence in connection with the offense at hand. In addition, he has a long history of substance abuse.

8

These factors led me to reject the government's recommendation of a sentence of 135 months.

However, I could not adopt defendant's request. I was mindful of the very serious nature of the defendant's conduct; the extent of defendant's involvement; the broad scope of the drug trafficking conduct, including the quantity and variety of the dangerous drugs and the length of the conduct, among other factors. Moreover, I considered that defendant was previously convicted in this District for the offense of being a felon in possession of a firearm, for which he served about 15 years of incarceration. Yet, that did not deter him from engaging in further criminal conduct, which began within a relatively short period of time following his release to supervision. This remains very troubling.

The sentence I imposed was below the bottom of the Guidelines. And, as noted, it was below that which was requested by the government. It was also below the top of the parties' agreed C plea range.

In sum, I discern no error. There is dissatisfaction, but that is not the grounds on which the Court can revisit the sentence.

## Conclusion

For the foregoing reasons, I shall deny defendant's motions to correct or reduce sentence. An Order follows.

Date:   March 27, 2024                                     /s/
                                                Ellen L. Hollander
                                                United States District Judge